IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| *In re* § | |
| § | |
| ZG GATHERING, LTD., § | |
| § | |
| *Debtor* § | |
| § | |
| NORTHERN NATURAL GAS COMPANY, § | |
| § | |
| *Appellant*, § | |
| § | |
| v. § | Civil Action No.  SA-09-CV-799-XR |
| § | |
| BETTY LOU SHEERIN, § | |
| § | |
| *Appellee.* § | |

**ORDER**

On this date, the Court considered Appellant Northern Natural Gas Company's appeal from an order of the bankruptcy court denying a motion for rehearing or new trial.  Having considered the record, applicable law, and the parties' arguments, the Court AFFIRMS the bankruptcy court's order.

**I. Background**

McDay Energy Partners, Ltd. ("McDay") filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in May 2000.  *In re McDay Energy Partners, Ltd.*, No. SA-00-bk-52075-RBK (Bankr. W.D. Tex. filed May 30, 2000). On February 5, 2001, the bankruptcy court entered an order confirming McDay's Modified First Amended Plan of Reorganization.[1]  McDay's name changed to ZG Gathering Ltd.

Appellant Northern Natural Gas Company ("Northern") held claims based on two promissory

---

[1] Bankruptcy Docket No. 149 Ex. A.

notes for a total of $3,709,914. One promissory note in the amount of $1,828,000 was signed by McDay only and the other note in the amount of $1,950,000 was signed by both McDay and Appellee Betty Lou Sheerin. Sheerin is the majority limited partner of McDay and ZG Gathering.

*The McDay Plan*

Under the McDay Plan, the debtor was to make no payments to Northern for six months after the initial Distribution Date, then pay $10,000 each month for six months, $20,000 each month for the following twelve months, and $30,500 each month thereafter. The $30,500 monthly payments would continue until April 10, 2009, at which time the entire remaining balance of principal and accrued interest would become due. From each monthly payment, 51.6% would be applied to the indebtedness under the $1,950,000 Sheerin/McDay promissory note and the remaining 48.4% would be applied to the indebtedness under the $1,828,258 McDay promissory note. Repayment was secured by McDay's assets owned at the time the McDay Plan was created.[2]

*ZG Gathering Bankruptcy*

ZG Gathering filed for bankruptcy in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in November 2007. *In re ZG Gathering, Ltd.*, No. SA-07-bk-53161-RBK-11 (Bankr. W.D. Tex. filed Nov. 30, 2007). The ZG Gathering System and ZG Pipeline were sold for approximately $1,360,000 at an auction held under the supervision of the bankruptcy court on January 30, 2009. After payment of tax liens and expenses, Northern received the remainder of the proceeds.

---

[2] Appellant refers to one of these assets as "ZG's Gathering System" which are natural gas gathering facilities, including pipeline, real property, and facilities in Zavala County, Uvalde County, and Frio County, Texas. This was collateral for the $1,950,000 Sheerin note. The other asset is identified as "ZG's Pipeline," which is a pipeline related to the real property and facilities in Zavala County that was collateral for the $1,828,258 Sheerin/McDay note.

On March 18, 2009, the bankruptcy court ordered that 51.6% of the auction sale proceeds be applied to the indebtedness due from the $1,950,000 Sheerin/McDay promissory note and 48.4% of the auction sale proceeds be applied to the indebtedness due from the $1,828,258 McDay promissory note in accordance with the McDay Plan.[3]

Prior to the entry of the Court's order, Northern moved the bankruptcy court to reconsider with a motion styled "Northern Natural Gas Company's Motion for Rehearing or New Trial as to Allocation of Rights of Betty Lou Sheerin and Regarding the Res Judicata Effect of McDay's Confirmed Plan of Reorganization and Motion for Determination of Contested Matter Under Rule 9014 as to Pre-Confirmation Defenses of Betty Lou Sheerin and Alternatively Application for Declaratory Judgment."[4]  In an order signed June 11, 2009, and entered June 12, 2009, the bankruptcy court denied Northern's motion.[5]

## II. Procedural History

Northern appealed the decision to this Court.  The Appellant, Northern, and Appellee, Sheerin, have both briefed this Court.[6]  On June 29, 2010, the Court ordered Appellant "to supplement its designation of the record and provide the Court with transcripts of the *relevant*

---

[3]Bankruptcy Docket No. 155.  Northern states that the "Bankruptcy Court also ruled that Sheerin would only be entitled to an allocation from the auction proceeds if she is liable on the $1,950,000 Note." Appellant's Br. 7–8.  The bankruptcy court's order does mention this and Northern does not point the Court where the bankruptcy court issued this order.

[4]Bankruptcy Docket No. 149.

[5]Bankruptcy Docket No. 175.

[6]Appellant's Br., Oct. 13, 2009 (Docket No. 5); Appellee's Br., Oct. 28, 2009 (Docket No. 8); Appellant's Reply Br., Nov. 9, 2009 (Docket No. 9).

3

*proceedings*."[7] Appellant supplemented the record with the transcript of a bankruptcy hearing held on June 11, 2009.[8]

### III. Issues on Appeal

Northern appeals from the bankruptcy court's denial of its motion for reahearing or new trial. Appellant states that: (1) Sheerin is not entitled to an allocation or offset arising from the terms of the McDay Plan that are not "monthly payments" as defined in the Plan; (2) If Sheerin is entitled to an allocation sale proceeds, it is not based on the 51.6% of monthly payments; (3) Sheerin is barred from raising defenses of liability on the $1,950,000 Sheerin/McDay promissory note that arose before February 5, 2001, the date of confirmation of the McDay Plan; (4) Sheerin is an equity security holder of McDay; and (5) As an equity security holder, she is bound by the McDay Plan and precluded from raising pre-confirmation defenses to her liability on the $1,950,000 Sheerin/McDay promissory note.

### IV. Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

### V. Legal Standard

A district court "acts in an appellate capacity" in reviewing the findings and orders of the bankruptcy court. *In re Perry*, 345 F.3d 303, 308 (5th Cir. 2003) (citing *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992)); *see also* 28 U.S.C. § 158(a). Conclusions of law are reviewed de novo, and findings of fact are reviewed for clear error. *In re Martinez*, 564 F.3d 719, 726 (5th Cir. 2009) (quoting *In re OCA, Inc.*, 551 F.3d 359, 366 (5th Cir. 2008)). Factual findings are upheld unless

---

[7]Order, Jun. 29, 2010 (Docket No. 14) (emphasis added).

[8]Supplement, Jul. 9, 2010 (Docket No. 16).

"considering all the evidence, this court forms 'a definite and firm conviction that a mistake has been made.'" *In re Coppola*, 419 F.3d 323, 326 (5th Cir. 2005) (quoting *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993)).

## VI. Analysis

As an initial matter, this Court's review is limited to the orders entered by the bankruptcy court. Styled as a motion for rehearing and new trial, Northern's motion was a motion for reconsideration pursuant to Federal Rule of Bankruptcy Procedure 9023[9] (regarding motions for new trials or to alter or amend a judgment) or Federal Rule of Bankruptcy Procedure 9024[10] (regarding relief from judgment or order).

Northern has appealed from the bankruptcy court's decision on its motion for reconsideration, but it did not provide the Court with a transcript of the proceedings so the Court could evaluate the findings of fact made on the record and referenced in the Court's written orders.

---

[9]Rule 9023 reads:
> Except as provided in this rule and Rule 3008, Rule 59 F. R. Civ. P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment.

FED. R. BANKR. P. 9023.

[10]Rule 9024 reads:
> Rule 60 F. R. Civ. P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

FED. R. BANKR. P. 9024.

On June 29, 2010, the Court ordered Appellant "to supplement its designation of the record and provide the Court with transcripts of the relevant proceedings" because Appellant "failed to provide this Court with any transcript of the relevant hearings."[11]  Because Northern appealed from the bankruptcy court's order on a motion for reconsideration, the Court requested transcripts of the relevant hearings since the findings for the orders that provide the basis for a motion to reconsider would have been articulated in hearings prior to the hearing on the motion to reconsider.  Appellant was warned that failure to designate the requisite transcripts would "result in an appropriate sanction, which may include dismissal, for failure to adhere to the Federal Rules of Bankruptcy Procedure and to comply with an order of the Court, or the Court shall consider the bankruptcy appeal based on the record it has before it."[12]

Northern supplemented the record with the transcript of the hearing on the motion for reconsideration.  It did not, however, provide the Court with the transcript of the previous hearings for the orders that provide the basis for Northern's motion for reconsideration.  Appellant must "ensur[e] that the record on appeal include[s] all of the items relevant and necessary to its position." *In re Ichinose*, 946 F.2d 1169, 1173 (5th Cir. 1991); *see also* FED. R. BANKR. P. 8006.  The Court will, however, address the appeal with the record before it.

**A. Sheerin's Allocation of Funds**

It is clear that a plan of reorganization "functions as a contract in its own right." *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002).  Appellant states that it is undisputed that McDay and ZG Gathering breached their payment obligations under the McDay Plan, and that as a result of

---

[11]Order (Docket No. 14).

[12]*Id.* at 2.

that breach, neither ZG Gathering nor Sheerin can claim the benefits of the provisions. The bankruptcy court's amended order shows that it was considering a motion by Betty Lou Sheerin to determine the allocation upon disbursement of proceeds of the bankruptcy court-supervised auction sale. The order reads:

> The Court finds, based upon the original Plan of Reorganization confirmed on February 5, 2001 . . . the orders confirming that Plan, and the findings of fact and conclusions of law stated on the record in this case, that Sheerin and Northern Natural Gas Company are bound by the terms of the McDay Plan, that the proceeds of the sale of the property ZG Gathering (the "Proceeds") should be allocated and applied ratably to the balance due on the two notes held by Northern Natural Gas, as provided by the McDay Plan, so that 51.6% of the Proceeds shall be applied to the indebtedness due and owing under the note signed by Sheerin and McDay, in the original principal amount of $1,950,000.00 and 48.4% of the proceeds shall be applied to the outstanding indebtedness due and owing under the terms of the note signed by McDay, in the original principal amount of $1,828,258.00.[13]

The McDay Plan does not discuss the results of the collateral that secured the promissory notes being sold. It is not clear to what extent any alleged breach of the McDay Plan would impact the bankruptcy court's allocation of resources. In any case, the bankruptcy court was within its authority to implement the equitable doctrine of marshaling and divide the proceeds based on the allocation of proceeds in the McDay Plan.[14] Given that the Court can discern a reasonable basis for the bankruptcy court's decision, the Court cannot find that the bankruptcy court's allocation of proceeds based on the allocation contemplated in the McDay Plan is clear error.

---

[13] Bankruptcy Docket No. 155.

[14] "Marshaling allows the courts to arrange assets or claims to secure the proper application of the assets to the various claims and to allow all parties having equities to receive their due proportion, protecting creditors from the destruction of their interest by arbitrary application of collateral to the indebtedness of other creditors." 15A FLETCHER CYC. CORP. § 7624.

B.  **Allocation of Funds Based on the McDay Plan**

Northern states that Sheerin is only entitled to an allocation if she is liable on the $1,950,000 note, claiming that the bankruptcy court confirmed this statement orally at the hearing. Northern argues that if any allocation is appropriate, it is the value of ZG's Gathering System that secured the $1,950,000 note. Northern provides no legal basis for this argument. As previously stated, however, the Court can discern a reasonable basis for the bankruptcy court's decision to allocate the proceeds of sale based on the allocation contemplated in the McDay Plan. Consequently, the Court finds no clear error in the bankruptcy court's decision.

C.  **Res Judicata**

Northern sought a declaration from the bankruptcy court that Sheerin be barred from raising any defense as to her liability on the $1,950,000 McDay/Sheerin note under the doctrine of res judicata. The motion was denied. The bankruptcy court provided the following basis for its decision:

> Number one, res judicata does not apply because it's not the same cause of actions asserted in the original plan. Northern Natural Gas and Ms. Sheerin were not adverse in the sense that there was either a contested matter or an adversary proceeding between them to determine the liability on that note. And the mention in the disclosure statement may be interesting for evidence in state court, but it's certainly not binding on anyone. There's nothing in the plan that dictates the treatment between Northern Natural Gas and Ms. Sheerin. . . .
> . . . I don't think it was actually litigated, so—and, thus, I don't think it's the same issue. . . . It just wasn't an issue in that case. I mean, there was some mention of allocation of the note payments, and so forth, but the dispute between Northern Natural Gas and Ms. Sheerin was not litigated in the plan confirmation hearing.[15]

---

[15] Tr. 3 (Jun. 11, 2009) (Ruling of the Court).

Northern argues that res judicata bars Sheerin from disputing the validity of her debt to Northern because her status as a co-maker of the $1,9500,000 note is stated in the McDay bankruptcy proceeding.[16] Sheerin contends that res judicata does not apply.[17]

The preclusive effect of a prior proceeding is a question of law. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 868 (5th Cir. 2000). The doctrine of res judicata applies if four requirements are met: "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases." *Oreck Direct LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007)). This Court notes, and Sheerin concedes, that the second and third elements of the test are met in this case.[18] The United States Bankruptcy Court for the Western District of Texas entered an order on the McDay Plan in 2001 that constituted a final judgment on the merits. The parties dispute the first and fourth elements.

*1.    Sheerin was a party to the previous proceeding.*

Sheerin argues that she was not a party to the previous proceeding, did not participate in the proceeding, never signed a document in the proceeding, and never testified.[19] Northern argues that as an "equity security holder" in McDay, Sheerin qualified as a party in interest in the first action

---

[16]Appellant's Br. 11–16.

[17]Appellee's Br. 7–11.

[18]*See* Appellee's Br. 7.

[19]*Id.* 7–8.

9

who is bound by the provisions of the confirmation plan.[20]  Secured equity holders have standing in a bankruptcy proceeding that can subject them to res judicata.  *See In re JNS Aviation, LLC*, 334 B.R. 202, 204–06 (Bankr. N.D. Tex. 2005); *In re Keener*, 268 B.R. 912, 918 (Bankr. N.D. Tex. 2001); *see also Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480–81 (6th Cir. 1992) ("Other entities, such as creditors and equity security holders in the debtor, must also be considered parties for res judicata purposes.").  That Sheerin did not participate in the previous proceedings by testifying or signing documents is irrelevant.  Her status as an equity security holder made her a party to the previous proceeding.

2.       *Sheerin's personal liabilty was not adjudicated in the McDay bankruptcy proceeding.*

Even if Sheerin was a party to the previous bankruptcy proceeding, there must be an identity of claims between the two actions for res judicata to apply.  To determine whether the same claim is involved in two actions, the Court applies the transactional test of the Restatement (Second) of Judgments § 24.[21]  *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992) (citing *Ocean Drilling & Exploration Co. v. Mont Boat Rental Servs., Inc.*, 799 F.2d 213, 217 (5th Cir. 1986)).  "The critical issue under this determination is whether the two actions under consideration are based on

---

[20]Appellant's Br. 13–14.  While Sheerin disputes that she was not a party to the previous bankruptcy suit, she admits that she was an equity security holder in the McDay case.  Appellee's Br. 8 ("Although Sheerin was certainly an equity security holder in the McDay case . . . .").

[21]In explaining the transactional test, the comment in the Restatement reads:
> In general, the expression connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1982).

'the same nucleus of operative facts.'" *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000) (citing *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990).

In the McDay bankruptcy proceeding, the issues before the bankruptcy court involved McDay's indebtedness to Northern. While Betty Lou Sheerin is listed as a co-maker of the $1,9500,000 note with McDay, McDay was the entity in bankruptcy; not Betty Lou Sheerin. Issues raised before the bankruptcy court concerned McDay's liability on the $1,9500,000 note and not Betty Lou Sheerin's *personal* liability. Northern argues that the validity of the $1,9500,000 note was litigated in McDay's bankruptcy; however, Northern conflates the validity of the note with Sheerin's personal liability on the note.[22] None of the documents before the Court nor the statements referenced by Northern in its brief establish Sheerin's personal liability. *Cf. F.D.I.C. v. Trans Pac. Indus., Inc.*, 14 F.3d 10, 11–12 (5th Cir. 1994) (evaluating whether a plaintiff could enforce a promissory note against the defendant corporation's chairman in his individual capacity). McDay's liability formed the nucleus of operative facts in the bankruptcy proceeding. Although possibly related, Sheerin's liability is ancillary to the proceeding since the case involved McDay's indebtedness. As the bankruptcy judge noted, "[T]he mention in the disclosure statement [that Sheerin is a comaker of the note] may be interesting for evidence in state court, but it's certainly not binding on anyone."[23] Consequently, res judicata does not apply as it pertains to Betty Lou Sheerin's personal liability to Northern.

**D. Sheerin's status as an equity security holder**

As the Court previously noted, and as admitted by Sheerin, she is an equity security holder

---

[22]*See* Appellant's Br. 9.

[23]Tr. 3 (Ruling of the Court).

of McDay.

### E. Sheerin's status as an equity security holder who is bound by the McDay Plan

Northern argues that as an equity security holder, Sheerin is bound by the McDay Plan and precluded from raising pre-confirmation defenses to her liability on the $1,950,000 Sheerin/McDay promissory note.[24]  Sheerin responds that this issue is duplicative of the res judicata issue.[25]  The Court agrees with the Appellee that Northern's fifth issue in this appeal is duplicative of its issue pertaining to res judicata.  "The order of confirmation acts as res judicata on all matters addressed by the plan."  *In re Keener*, 268 B.R. 912, 918 (Bankr. N.D. Tex. 2001) (citing *First Nat'l Bank v. Allen*, 118 F.3d 1289 (8th Cir. 1997); *In re Watkins*, 240 B.R. 735 (Bankr. C.D. Ill. 1999)).  Sheerin is bound by the confirmation plan just as any equity security holder would be bound by a confirmation plan.  However, the confirmation plan does not address Sheerin's personal liability nor does it bind Sheerin regarding her personal liability on the $1,9500,000 note.

### Conclusion

Having considered the parties' briefs and the record, the decision of the bankruptcy court to deny Appellant's motion for a motion for rehearing or new trial is hereby AFFIRMED.

It is so ORDERED.

SIGNED this 4th day of August, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[24] Appellant's Br. 16–17.

[25] Appellee's Br. 11.